THE EMPIRE DISTRICT ELECTRIC COMPANY, a Corporation, Appellant, v. ROBERT F. JOHNSTON, and EDNA JOHNSTON, Respondents.—268 S. W. (2d) 78.

Springfield Court of Appeals. Opinion filed May 11, 1954.

760

*E. P. Dwyer, Jr.* and *A. E. Spencer* for appellant.

*Stemmons & Stemmons* for respondents.

STONE, J.—In this proceeding, Empire District Electric Company (hereinafter called plaintiff) is condemning a right-of-way, 50 feet in width, across certain described tracts in Lawrence County, Missouri, including a tract owned by Robert F. and Edna Johnston (hereinafter called defendants), for erection and maintenance of high voltage electric transmission lines. In accordance with our statutory procedure (Chapter 523, RSMo 1949, V.A.M.S.), commissioners were appointed who assessed damages of $150.00 for the right-of-way across defendant's tract. Upon defendants' exceptions, trial by jury was had which resulted in a verdict of $1,300.00, from which plaintiff appeals.

Defendant's tract is located on the north side of U. S. Highway 166 (which runs in a general easterly and westerly direction) near the east corporate limits of Mount Vernon, Missouri, and at the "T-intersection" of Highway 166 and Missouri State Highway 39 which enters Highway 166 from the south, but does not cross it, at that point. The affected tract is 1494 feet in length, east and west (that being the frontage on the north side of Highway 166), and 210 feet in width, north and south, and has an area of approximately 7 acres. The west line of plaintiff's 50-foot right-of-way, which angles across defendants' tract in a general northerly and southerly direction, is approximately 232 feet east of the west end of the tract. By its petition in condemnation, plaintiff covenants that it will not fence the right-of-way strip and "does not desire exclusive use or occupancy of any portion thereof except the portions thereof physically occupied" by the two wooden poles on the right-of-way strip, one of which is near the south side of defendants' tract fronting on Highway 166 and the other some 160 feet north of the first pole. Plaintiff's pole line is to carry 69 KV and 12 KV circuits with a minimum clearance of not less than 18 feet above ground level under adverse weather and ice conditions.

The west 500 feet of defendants' tract is about level with Highway 166 and "is open or exposed" to the "T-intersection" made by Highway 39 entering from the south. Beginning about 500 feet east of the west end of the tract, the ground level begins to slope downward below the level of Highway 166, so that the east end of this tract is substantially below (one of plaintiff's witnesses said 50 or 60 feet below) the level of Highway 166 and considerable filling would be required to make the east end suitable for building purposes. Defendants' long, narrow tract of limited acreage is not suitable for farming and has not been utilized for any purpose. However, all of the witnesses on the subject of valuation agreed that defendants' tract is suitable and adaptable for construction of a motel, filling station, restaurant or other highway business, and the evidence clearly shows that the west 500 feet of the tract, which is level with Highway 166, would be "the most ideal place" for any building or construction. Plaintiff's right-of-way strip and electric transmission line "splits"

or crosses this west 500 feet of defendant's tract about the middle thereof.

Defendants did not appear personally at the trial. Defendant, Robert F. Johnston (hereinafter referred to as defendant Johnston), testified by deposition, which was taken in Hoquiam, Washington, where defendants then resided, on February 28, 1952, pursuant to written notice on which, during January, 1952, plaintiff's attorneys had acknowledged service and had waived "issue of dedimus and all exceptions as to time". Defendant Johnston's deposition was taken before Omar S. Parker, notary public, who, as "attorney for defendants", also conducted the direct examination of defendant Johnston. Plaintiff appeared at the taking of this deposition by Attorney Charles L. Hyndman, who not only interposed numerous objections to questions propounded on direct examination (which objections, in accordance with our practice, were not ruled by the notary) but also cross-examined defendant Johnston in some detail. The transcript reflects no objection, at the time, to Parker acting as notary public and also as local attorney for defendants, and there was no attack upon or complaint about the deposition prior to trial. When defendants' attorneys offered the deposition in evidence at the trial, plaintiff objected "on the ground that it was taken before and by the attorney for the defendants, Omar S. Parker, both as attorney and notary". That objection being overruled, plaintiff here assigns error, on the same ground, in the admission of defendant Johnston's deposition.

Cases cited by plaintiff on this point[1] condemn the practice of an attorney acting as notary public in the taking of a deposition, in which the attorney also represents one of the parties to the suit, but none of those cases convict the trial court of error in admitting the deposition of defendant Johnston, upon the record before us. On the contrary, the Redmond case is an authority against plaintiff's present contention. For, although conceding (126 S.W. l.c. 162) that the fact "that the notary was a partner of one of the attorneys * * would have been good ground to suppress the deposition if timely objection had been made", the Supreme Court there held, after pointing out that opposing counsel, who were present at the deposition, "made no objection to the notary on that ground", that the trial court did not err in overruling a subsequent motion to suppress the deposition. In the Swink case, where it was said that a motion to suppress should have been sustained, the opinion shows (96 Mo. App. l.c. 424) "that the defendant was neither personally present not represented by an attorney at the taking of the depositions".

That "a party should not be permitted to lie by and lull his adversary into a sense of security by failure to file any motion to

---

[1]Redmond v. Quincy, O. & K.C. R. Co., 225 Mo. 721, 126 S.W. 159, 162-3 (10-13); Swink v. Anthony, 96 Mo. App. 420, 70 S.W. 272, 273(1); Stewart v. Emerson, 70 Mo. App. 482, 485-6(2).

suppress his depositions, thus induce him to announce himself ready for trial, and then count on springing the question of some informality on him, for the first time, when he offers to read those depositions in evidence", has long been recognized[2]. It is equally well settled that, by proceeding to trial without any attack upon or complaint about a deposition, irregularities in connection with the taking thereof are waived[3]. There being no showing or charge that the attorney representing plaintiff at the taking of defendant Johnston's deposition was restricted in the making of objections or in cross-examination of the witness, or that the notary was guilty of oppressive or fraudulent conduct, or that the deposition, as returned, was inaccurate or incomplete in any respect, and there having been no attack upon the deposition prior to trial, we cannot agree with the contention of plaintiff's counsel that their objection, after trial had begun, was timely. Such objection (if it was to have been made) should have been presented prior to trial, when defendants' counsel either might have arranged for their clients to have appeared personally or might have asked that the cause be continued in order that the deposition might be retaken. Abbott v. Marion Mining Co., 112 Mo. App. 550, 554, 87 S.W. 110, 111(1). The trial court did not err in admitting the deposition of defendant Johnston.

Plaintiff's next assignment is that error was committed in admitting the testimony of defendant Johnston, as given in his deposition, concerning the use he intended to make of the tract in question. Over plaintiff's objections, defendant Johnston was permitted to testify that he had purchased this tract on October 30, 1947, "for the purpose of building a motel, restaurant and filling station at the point of the intersection of Highways 166 and 39", and that "I had planned to use the west 500 feet * * * because this area is the only portion that is level with the highway and that is open or exposed to the intersection". Defendant Johnston's testimony as to intended use of the tract was limited to that of the character quoted.

There is substantial and persuasive authority, both by express declaration[4] and by inference, intendment or result,[5] for the prop-

[2]Delventhal v. Jones, 53 Mo. 460, 462; Holman v. Bachus, 73 Mo. 49, 51-2; Deane Pump Co. v. Green & Clark, 31 Mo.App 269, 270-1; Crenshaw v. Pacific Mutual Life Insurance Co., 71 Mo.App. 42, 53; Little Rock Grain Co. v. Brubaker & Co., 89 Mo.App. 1, 5; Hutchens v. Wagner, 274 S.W. 105, 106(1).

[3]Chilton v. Ralls, 220 Mo.App. 355, 286 S.W. 718, 719(3); Ruddy v. Gunby, Mo.App., 180 S.W. 1043, 1045(9); Bell v. Jamison, 102 Mo. 71, 14 S.W. 714, 715; Holman v. Bachus, supra, l.c. 51; Deane Pump Co. v. Green & Clark, supra, l.c. 270; Crenshaw v. Pacific Mutual Life Insurance Co., supra, l.c. 53(7)

[4]Nichols on Eminent Domain (2nd Ed.), Vol. I, Sec. 217, p. 662; Lewis on Eminent Domain (3rd Ed.), Vol. 2, Sec. 709, p. 1240; Elliott on Roads and Streets (4th Ed.), Vol. I, Sec. 290, p. 348; Tigar v. Mystic River Bridge Authority 329 Mass. 519, 109 N.E.2d 148, 151(5); Halstead v. Vandalia R. Co., Ind.App., 95 N.E. 439, 441(4); Board of Education of City of Minneapolis

osition that it is improper to permit a landowner to testify in a condemnation proceeding as to the use which he may intend to make of his property. The rationale of the listed cases seems to be that evidence of this character offered in those instances has been too speculative, conjectural or remote and thus has been inadmissible under the general principle that "elements affecting value that depend upon events or combinations of occurrences which, while within the realm of possibility, are not fairly shown to be reasonably probable, should be excluded from consideration for that would be to allow mere speculation and conjecture to become a guide for the ascertainment of value"[6].

Of course, it is proper for the jury to take into consideration all uses for which the condemnee's property is suitable and adaptable, having regard to existing business or wants of the community, or such as may be reasonably expected in the immediate future[7]; and, it has been held in a number of cases that evidence of intended use or proposed improvements tending to show or illustrate the adaptability of condemnee's property for certain uses or purposes may

---

v. Heywood Mfg. Co., 154 Minn. 486, 192 N.W. 102, 103(1); Wadsworth Land Co. v. Piedmont Traction Co., 162 N. C. 503, 78 S.E. 299, 300(2); Perry v. Wichita Falls, R. & F.W. R. Co., Tex.Civ.App., 238 S.W. 276, 278(7); Galveston, H. & S.A. Ry. Co. v. Schelling, Tex.Civ.App., 198 S.W. 1018, 1026(1-3).

[5]The Sedalia, W. & S. Ry. Co. v. Abell, 18 Mo.App. 632, 637-8(1); Pinkham v. Chelmsford, 109 Mass. 225, 228; Fairbanks v. Fitchburg, 110 Mass. 224; Richmond & P. Electric Ry. Co. v. Seaboard Air Line Ry., 103 Va. 399, 49 S.E. 512, 514-5(3); Alberson Cemetery Assn. v. Fuhrer, 192 Ind. 606, 137 N.E. 545, 547(4); Goodwine v. Evans, 134 Ind. 262, 33 N.E. 1031, 1032; Farmer v. Stillwater Water Co., 99 Minn. 119, 108 N.W. 824, 825; Medelman v. Stanton-Pilger Drainage Dist., 155 Neb. 518, 52 N.W.2d 328, 333(16,17); Weiss v. Commissioners of Sewerage of Louisville, 152 Ky. 552, 153 S.W. 967, 968(3); City of Los Angeles v. Kerckhoff Cuzner Mill & Lumber Co., 15 Cal.App. 676, 115 P. 654, 655; Chicago, B. & Q. R. Co. v. North Kansas City Development Co., 8 Cir., 134 F.2d 142, 155(28, 29); Five Tracts of Land v. United States, 101 F. 661, 664(1); In the Matter of Furman Street, 17 Wendell 649, 13 N.Y. Com.Law Rep. 265, 272.

[6]Olson v. United States, 292 U.S. 246, 257, 54 S.Ct. 704, 78 L.Ed. 1236, 1245(9); Shell Pipe Line Corp. v. Bruns, Mo.App., 239 S.W.2d 546, 549-550 (1, 2); Anno. 16 A.L.R.2d 1113, 1116-7; Anno. L.R.A. 1917A 405, 412-3; Orgel on Valuation Under Eminent Domain (2nd Ed.), Vol. 1, Sec. 31, p. 152 et seq. Cf. City of St. Louis v. Gerhart Realty Co., 328 Mo. 103, 40 S.W.2d 661, 663-4, in which testimony concerning negotiations for prospective lease of condemnee's property was held inadmissible.

[7]State ex rel. State Highway Commission v. Cox, 335 Mo. 271, 77 S.W. 2d 116, 119; State ex rel. State Highway Commission v. Leftwich, Mo.App., 263 S.W.2d 742, 747-8(6); State ex rel. State Highway Commission v. Flynn, Mo.App., 263 S.W.2d 854, 857(11, 12); Shell Pipe Line Corp. v. Bruns, supra, 239 S.W.2d l.c. 550(6); Metropolitan St. Ry. Co. v. Walsh, 197 Mo. 392, 94 S.W. 860, 868(13, 14); State ex rel. State Highway Commission v. Graham, Mo.App., 74 S.W.2d 493, 495(3); Mississippi & Rum River Boom Co. v. Patterson, 98 U.S. 403, 25 L.Ed. 206, 208; Olson v. United States, supra, 292 U.S. l.c. 255, 78 L.Ed. l.c. 1244(4)

be admissible[8]. " * * evidence of the advantages which the owner has been able, or *will be able,* to take of his property may often be competent evidence of the advantages which some other owner might take". Orgel on Valuation Under Eminent Domain (2nd Ed. 1953), Sec 45, p. 215. "* * the question of whether evidence of this kind is proper depends entirely upon the purpose for which it is offered and to which it is limited by the court. If it is offered merely as an illustration of one of the uses to which the property is adapted and it is clearly and expressly limited by the court to such object it will not be prejudicial error to admit it * * *." Dept. of Public Works, etc. v. Lambert, 411 Ill. 183, 103 N.E. 2d 356, 361(8). In discussing an ambiguous memorandum filed by the trial judge, the appellate court commented in Daly City v. Smith, 110 Cal. App. 2d 524, 243 P. 2d 46, 51, that "if the trial court meant that appellants' (condemnees') experts were not entitled to consider the proposed plan of the appellants to construct a motel on the premises in considering whether the property was adaptable for that purpose as one of its uses, the trial court was clearly wrong". In other words, evidence as to intended use may be proper or, in any event, harmless so long as its purpose and effect is simply to show or illustrate adaptability of condemnee's land for the proposed use, but such evidence becomes improper and prejudicial if and when its purpose and effect is "to show enhanced loss because the owner is prohibited from carrying out that particular improvement" (Daly City v. Smith, supra, 243 P. 2d l.c. 51) or "if the object is to enhance the damages by showing such a (proposed) structure would be a profitable investment" (Department of Public Works, etc. v. Lambert, supra, 103 N.E. 2d l.c. 361).

In the instant case, as in People v. La Macchia, Cal. App., 253 P. 2d 709, 718, "the evidence of the owners' plans for the use of the property was really a part of the description of the uses to which

---

[8]Nichols on Eminent Domain (2nd Ed.), Vol. II, Sec. 445, p. 1170; City of St. Louis v. Paramount Shoe Mfg. Co., 237 Mo.App 200, 168 S.W.2d 149; People v. La Macchia, Cal.App., 253 P.2d 709, 716-8(12); Daly City v. Smith, 110 Cal.App.2d 524, 243 P.2d 46, 51(5, 7); Department of Public Works, etc. v. Lambert, 411 Ill. 183, 103 N.E.2d 356, 361(8, 9); City of Shreveport v. Abe Meyer Corp., 219 La. 128, 52 So.2d 445, 446-7; Thornton v. City of Birmingham, 250 Ala. 651, 35 So.2d 545, 547(8), 7 A.L.R.2d 773, 778(7); Wichita Falls & N.W. Ry. Co. v. Holloman, 28 Okla. 419, 114 P. 700; Jeffery v. Osborne, 145 Wis. 351, 129 N.W. 931, 936(10); Crystal City & U. R. Co. v. Isbell, Tex.Civ.App., 126 S.W. 47(3); United States v. 25.406 Acres of Land, etc., 4 Cir., 172 F.2d 990, cert. den. 337 U.S. 931, 69 S.Ct. 1496, 93 L.Ed. 1738. See and compare also McCandless v. United States, 298 U.S. 342, 56 S.Ct. 764, 80 L.Ed. 1205, 1207; Atlantic Coast Line R. Co. v. United States, 5 Cir., 132 F.2d 959, 963(7); Union Electric Light & Power Co. v. Snyder Estate Co., 8 Cir., 65 F.2d 297, 304(14); and, Orgel on Valuation Under Eminent Domain (2nd Ed.), Vol. 1, Sec. 29, pp. 139-140 where it appears to have been assumed, without discussion, that evidence as to intended use by owner would be admissible.

the land is adapted, and was not expressed in money value". All of the witnesses in the instant case properly expressed their opinion as to the reasonable market value of defendants' tract immediately before and immediately after condemnation, without limitation to any single, specific or intended use of the land[9]. All cautionary instructions requested by plaintiff were given, including a warning "that in computing the damages * * * you should not consider speculative or contingent matters which could or might result in damage to the owners of said properties"; and, by the only instruction given at defendants' request (of which no complaint is made by plaintiff), the jury was instructed correctly on the measure of damages[10].

In Prairie Pipe Line Co. v. Shipp, 305 Mo. 663 (banc), 267 S.W. 647, a proceeding to condemn a pipe line right-of-way, our Supreme Court said, l.c. 650(6): "It may be conceded that there was immaterial and irrelevant testimony admitted concerning speculative damages * * * *. This testimony, however, was not of such a nature as to influence the verdict in view of the court's unmistakable limitations as to the basis of the jury's finding. No one reading these instructions can fail to understand that the damages authorized to be found must be limited to the injury inflicted by the laying of the pipe line and the depreciation caused thereby to the residue of the land." Under the circumstances of the instant case, we cannot believe or find that plaintiff was prejudiced or that error "materially affecting the merits of the action" (Section 512.160, RSMo 1949, V.A.M.S.) was committed by admission of defendant Johnston's testimony as to his intended use of the tract in question[11]. This assignment of error must be ruled against plaintiff.

Plaintiff's final assignment is that the verdict was excessive and that a remittitur should be ordered. Although "the appellate courts may, in a proper case, intererefe where the damages in condemnation

---

[9]Cf. St. Louis Terminal Ry. Co. v. Hieger, 139 Mo. 315, 40 S.W. 947, 948 (4); Lough v. Minneapolis & St. L. R. Co., 116 Iowa 31, 89 N.W. 77, 78.

[10]The measure of damages in a case of this character is the difference in the market value of the entire tract immediately before and immediately after the appropriation. State ex rel. Kansas City Power & Light Co. v. Gauld, Mo.App., 222 S.W.2d 940, 944(8); Texas-Empire Pipe Line Co. v. Stewart, 331 Mo. 525, 55 S.W.2d 283, 285(3); State ex rel. State Highway Commission v. Leftwich, supra, 263 S.W.2d l.c. 747(7); State ex rel. State Highway Commission v. Huddleston, Mo.App., 52 S.W.2d 33, 35(6); Arkansas Missouri Power Co. v. Killian, 225 Mo.App. 454, 40 S.W.2d 730, 731(1); Missouri Power & Light Co. v. Creed, Mo.App., 32 S.W.2d 783, 786(1).

[11]In this connection, see also City of St. Louis v. Buselaki, 336 Mo. 693, 80 S.W. 2d 853, 856; City of St. Louis v. Paramount Shoe Mfg. Co., supra; People v. LaMacchia, supra, 253 P.2d l.c. 718(12); Wichita Falls & N.W. Ry. Co. v. Holloman, supra, 114 P. l.c. 700-1. The general rule that an appellant cannot complain of error by which he is not prejudiced is applicable in a condemnation proceeding. City of St. Louis v. Busch, 252 Mo. 209, 158 S.W. 309, 312(5).

are grossly excessive or inadequate" [City of St. Louis v. Buselaki, 336 Mo. 693, 80 S.W. 2d 853, 857(9)], it has been held repeatedly that an award of damages supported by substantial evidence will not be disturbed [City of St. Louis v. Schopp, 325 Mo. 480, 30 S.W. 2d 733, 734(1); Prairie Pipe Line Co. v. Shipp, supra, 267 S.W. l.c. 650(4), and cases there cited]. A judgment in a condemnation proceeding should not be disturbed "because of a disparity in the testimony of witnesses or even because of a seeming preponderance of the evidence one way or another" [City of St. Louis v. Gerhart Realty Co., 328 Mo. 103, 40 S.W. 2d 661, 665(12)]; and, it has been held specifically that the opinion of one qualified witness as to the extent of damage "would constitute substantial evidence" [City of St. Louis v. Buselaki, supra, 80 S.W. 2d l.c. 857(7)].

In the instant case, one of the two realtors, who appeared on behalf of defendants, testified that the difference in the reasonable market value of defendants' tract immediately before and immediately after appropriation of plaintiff's right-of-way and construction of plaintiff's tranmission line was $200.00 to $225.00 per acre or $1,400.00 to $1,575.00 for the 7-acre tract affected. The other realtor testifying on behalf of defendants expressed the opinion that the difference in market value was $1,200.00. Thus, the verdict for $1,300.00 was within the range of evidence received.

"The weight to be given defendants' evidence is severely assailed by plaintiff in its brief, but it is not within our province to judge the weight to be given the testimony of a qualified witness." State ex rel. Kansas City Power & Light Co. v. Gauld, Mo. App., 222 S.W. 2d 940, 945(13). We have no right to substitute our view as to the extent of damage for the verdict of the jury which was supported by competent evidence and was reached under proper instruction on the measure of damage.

The judgment should be and is affirmed. *McDowell, P.J.,* concurs; *Blair, J.,* dissents.